UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| WASHINGTON INTERNATIONAL INSURANCE COMPANY<br>Plaintiff,<br><br>VS.<br><br>DICON CORPORATION, INC., DAVID IASCONE and CINDY IASCONE<br>Defendants. | : | CIVIL DOCKET NO.<br><br>[redacted] 05 088 T<br><br>FEBRUARY __, 2005 |

## MOTION FOR ATTACHMENT

Pursuant to R.I. Gen. Laws § 10-5-2 *et. seq.*, made applicable to Federal Court proceedings pursuant to Rule 64 of the Federal Rules of Civil Procedure the Plaintiff, Washington International Insurance Company ("Washington International" or the "Surety"), moves this Court to order a prejudgment remedy of attachment. In support of this Motion, Washington International sets forth the following:

1. The Surety issued Labor and Material Payment Bonds and Performance Bonds securing the performance of three construction contracts by the Defendant, Dicon Corporation, Inc. ("Dicon" or the "Bond Principal"). The bonded work was located in the State of Rhode Island and the Commonwealth of Massachusetts.

2. As a condition of, and in consideration for, the issuance of the Labor and Material Payment Bonds and Performance Bonds, Washington International required the Defendants, Dicon, David Iascone and Cindy Iascone (collectively, the "Indemnitors"), to enter into a General Indemnity Agreement with Washington International in which the Indemnitors agreed to exonerate and indemnify the



2

Surety in the event of the failure of Dicon to perform any of its bonded obligations.

3. Dicon defaulted in its bonded obligations by failing and/or refusing to pay subcontractors and suppliers for labor, material and/or equipment furnished to one or more of the bonded construction projects, and claims were made on the Bonds. Washington International has incurred losses in the investigation and payment of one or more claims made on the Bonds.

4. At least one of Dicon's subcontractors and suppliers commenced an action against Washington International, asserting that Dicon breached its contract and that Washington International breached its obligations under one of the Labor and Material Payment Bonds.

5. Dicon has also defaulted in its bonded obligations by failing and/or refusing to complete one or more of its bonded construction contracts. As a result, the Surety received notices of default and demands under its Performance Bonds. In addition, the Surety was recently named as a third party defendant in an action by the Town of Middletown asserting that Dicon breached its contract and seeking damages under the Performance Bond issued by the Surety for that project.

6. The Surety has notified the Indemnitors of the claims made against the Bonds and of their duties and obligations under the General Indemnity Agreement, including their responsibility to indemnify Washington International and to cooperate in the investigation of claims asserted against the Bonds. However, despite repeated demands, the Indemnitors have failed to indemnify the Surety

and have utterly failed to cooperate with Washington International in the investigation of the claims asserted against the Bonds.

7. As a result, Washington International has suffered, and will continue to suffer, damages for which there is probable cause that it will obtain judgment against the Indemnitors in an amount equal to or greater than the prejudgment remedy sought.

8. There is a strong need for a prejudgment remedy in this case to protect the Surety's interests. There is sufficient reason to believe that Dicon is not paying its debts as they come due and that, therefore, any judgment that Washington International obtains in this matter may prove difficult to collect. Moreover, based upon information and belief, the Indemnitors may transfer or convey certain real or personal property that could be utilized to satisfy the Surety's losses.

9. Washington International requests that this Court order a prejudgment remedy of attachment in the amount of **$166,418.09**, as more fully set forth in the attached Memorandum of Law and Affidavit of James A. Carpenter to:

   a. attach and garnish to such value sufficient nonexempt property, real and personal, of the Defendants; and

   b. attach to such value specifically the real property owned by David and Cindy Iascone located at 220 Cherry Hill Road, Johnston, Rhode Island;

   c. attach to such value specifically the real property owned by Dicon Corporation, Inc. and known as the "77 Hendrick Street" property;

   d. attach to such value specifically the real property owned by Dicon Corporation, Inc. and known as the "Butler Avenue" property;

e. attach to such value specifically any and all real property in which title is held by one or more of the Defendants;

f. attach to such value specifically the personal property (i.e. equipment, machinery, etc.) owned by Dicon Corporation, Inc.;

g. attach and/or garnish the funds in any accounts in the name of one or more of the Defendants held by any banking institutions within the State of Rhode Island; and

h. Any other relief that the Court deems just and proper.

10. In support of this Motion, Washington International submits herewith a Memorandum of Law and the Affidavit of James A. Carpenter. Washington International also incorporates by reference the Complaint in this action.

**WHEREFORE**, the Plaintiff, Washington International, requests that this Court immediately set a hearing for the requested attachment as soon as practical.

WASHINGTON INTERNATIONAL
INSURANCE COMPANY

By______________________________

James A. Bigos, Esq. #2958
Bigos & Partington
1725 Mendon Road, Suite 209
Cumberland, RI 02864
Tel (401) 334-4354

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| WASHINGTON INTERNATIONAL INSURANCE COMPANY<br>Plaintiff, | : | CIVIL DOCKET NO. |
| | : | [redacted] 05 088 T |
| VS. | : | |
| DICON CORPORATION, INC.,<br>DAVID IASCONE and<br>CINDY IASCONE<br>Defendants. | : | FEBRUARY __, 2005 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR ATTACHMENT**

## I. PRELIMINARY STATEMENT

The Plaintiff, Washington International Insurance Company ("Washington International" or the "Surety"), submits this Memorandum of Law in support of its Motion For Attachment against the Defendants, Dicon Corporation, Inc., David Iascone and Cindy Iascone (collectively hereinafter referred to as the Indemnitors").

## II. STATEMENT OF FACTS

The Plaintiff issued Labor and Material Payment Bonds and Performance Bonds securing the performance of three construction contracts by the Defendant, Dicon. The bonded projects that are the subject of this action are known as: 1) Seekonk Project; 2) Acushnet Project; and 3) Middletown Project. (Carpenter Aff. ¶¶ 4-9; Complaint ¶¶ 7 - 14).

Pursuant to Dicon's contract with the owner of each project, Dicon was required to post a payment bond for the benefit of Dicon's subcontractors and suppliers on the respective projects. Id. Washington International issued Labor and Material Payment

Bonds for each of these projects, as more particularly described within the Plaintiff's Complaint. Id.

As a condition of, and in consideration for, the issuance of the bonds on the foregoing projects, Washington International, on April 17, 2000, required the Indemnitors to enter into an General Indemnity Agreement with Washington International in which the Indemnitors agreed to exonerate and indemnify the Surety in the event of the failure of Dicon to perform any of its bonded obligations. (Carpenter Aff. ¶¶16-17; Complaint ¶ 15.) A copy of the General Indemnity Agreement is attached to the Complaint as Exhibit A. The relevant portions of the General Indemnity Agreement are set forth herein.

After Dicon began work on the Acushnet Project, Washington International received a demand for payment under its Payment Bond from Riley Paving who claimed it had not been paid by Dicon for labor and/or materials furnished to the Acushnet Project. (Carpenter Aff. ¶ 12; Complaint ¶ 17.). As a result, the Surety was required to satisfy Riley Paving's payment bond claim, thus incurring losses totaling at least $100,000.00. (Carpenter Aff. ¶ 12). The Surety is currently investigating several other potential claims and anticipates incurring additional losses in the near future.

In addition, Washington International received demands for performance under the Performance Bonds issued for the Acushnet and Middletown Projects. As a result of these demands, the Surety was required to complete Dicon's remaining contractual obligations to the Town of Acsuhnet thereby incurring losses totaling at least $56,300.00. (Carpenter Aff. ¶ 13). The Town of Middletown has also filed suit the Surety asserting that Dicon failed to perform its contractual obligations and seeking

damages under the Surety's Performance Bond. As a result of the foregoing claims, the Surety has incurred costs, consulting fees and attorneys' fees in excess of $10,118.09. (Carpenter Aff. ¶ 13). The Surety's total losses as a result of issuing the bonds exceeds **$166,418.09**. (Carpenter Aff.¶ 15).

On numerous occasions, Washington International has notified the Indemnitors of the claims made against the Bonds and their duties and obligations under the General Indemnity Agreement, including their responsibility to exonerate and pay the Surety's attorneys' fees, costs and expenses. The Surety has demanded that the Defendants post cash or other collateral. (Carpenter Aff. ¶ 14). However, despite demands, the Indemnitors have failed to indemnify Washington International or to furnish collateral. (Carpenter Aff. ¶ 14). Accordingly, the Surety now moves this Court to order a prejudgment remedy of attachment in the amount of **$166,418.09**.

### A. Relevant Terms of General Indemnity Agreement

The relevant provisions of the General Indemnity Agreement, attached to the Complaint, are set forth as follows:

> 2. The Indemnitors will indemnify the Surety against any and all liability, loss, costs, damages, fees of attorneys and other expenses which the Surety may sustain or incur by reason of, or in consequence of the execution of such bonds and any renewal, continuation or successor thereof, including but not limited to, sums paid or liabilities incurred in settlement of, and expenses paid or incurred in connection with claims, suits, or judgments under such bonds, expenses paid or incurred in enforcing the terms hereof, in procuring or attempting to procure the release from liability, or in recovering or attempting to recover losses or expenses paid or incurred, as aforesaid.
>
> 3. If the Surety shall set up a reserve to cover any liability, claim asserted, suit or judgment under any such bond, the Indemnitors will, immediately upon demand and whether or not the Surety shall have made any payment therefore, deposit with the Surety a sum of money equal to such reserve and any increase thereof as collateral security on such bond, and such sum any other money or property which shall have been or shall hereafter be pledged as collateral

security on any such bond shall be available, in the discretion of the Surety, as collateral security on all bonds coming within the scope of this instrument or for any other indebtedness of the Indemnitors to the Surety; and any such collateral security shall be held subject to the terms of the Surety's regular form of receipt for collateral, which is by reference made a part hereof.

4. If any such bond be given in connection with a contract, the Surety in its sole discretion is hereby authorized, but not required, . . . (c) in the event of any default in the performance of the contract, or the breach of this agreement or of any bond connected therewith, or the failure to diligently prosecute the work under any contract, or to pay for labor and materials used in the prosecution of the contract, or in the event work has ceased or been suspended on any contract or contracts covered by any said bonds, to take possession of the work under the contract, and, at the expense of the Indemnitors, to complete the contract or cause the same to be completed or to consent to the completion thereof, and to take any other action which the Surety may deem appropriate. In the event that the Surety takes possession of the work as above provided, the Indemnitors hereby release and discharge the Surety, in this connection, from al liability for all its actions and omissions except for deliberate misfeasance.

5. The Indemnitors hereby assign, transfer, pledge and convey to the Surety (effective as of the date of each such bond, but only in the event of default, breach or failure as referred to in proceeding Section 4), as collateral security, to secure the obligations hereunder and any other indebtedness and liabilities of the Indemnitors to the Surety, all of their rights under the contracts, referred to in such bonds, including their right, title and interest in and to (1) all subcontracts let in connection therewith and such subcontractors' surety bonds, (2) all machinery, plant, equipment, tools and materials which shall be upon the site or sites of the work or elsewhere for the purpose of the contracts, including all materials ordered for the contracts, and (3) any and all sums due or which may thereafter become due under such contracts and all sums due or to become due on all other contracts, bonded or unbonded, in which any or all of the Indemnitors have an interest.

8. The Surety shall have the exclusive right to decide and determine whether any claim, liability, suit or judgment made or brought against the Surety or the Indemnitors or any one of them on any such bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and the Surety's decision thereon, if made in good faith shall be final and binding upon the Indemnitors, unless the Indemnitors shall request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys fees, including those of the Surety. An itemized statement of payments made by the Surety for any of the purposes specified herein, sworn to by an officer of the

Surety, or the voucher or vouchers for such payments, shall be prima facie evidence of the liability of the Indemnitors to reimburse the Surety for such payments, with interest.

## III. ARGUMENT

**The Surety is Entitled to a Prejudgment Attachment Against the Indemnitors**

Rule 64 of the Federal Rules of Civil Procedure permits this Court to issue attachments "in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought". Under Rhode Island law, attachments are authorized by R.I. Gen. Laws § 10-5-2 et. seq. Specifically, § 10-5-5 authorizes the issuance of a writ of attachment upon motion and properly supported by affidavits. Washington International is entitled to a writ of attachment "upon a showing that there is a probability of a judgment being rendered in favor of the Plaintiff and that there is a need for furnishing the Plaintiff security in the amount sought for satisfaction of such judgment". R.I. Superior Court Rule 4(j)(3); see also Hatch v. O'Brien, 772 F.Supp. 1326, 1327-28 (D.R.I. 1991).

The Surety commenced the present action against the Indemnitors to recover payment for amounts that Washington International has paid and amounts that Washington International may become obligated to pay as a result of issuing the bonds on behalf of Dicon. The Surety's entitlement to such recovery is firmly rooted in both the General Indemnity Agreement and the law of suretyship. See General Indemnity Agreement at ¶¶ 1-3. Washington International has clearly established a probability of judgment and a need for security under Rhode Island law.

**Washington International Has Established A Probability Of Judgment And Need For Security For Losses and Expenses Already Incurred**

The General Indemnity Agreement, Paragraph SECOND, obligates the Indemnitors to jointly and severally indemnify Washington International from and against:

> any and all liability, loss, costs, damages, fees of attorneys and other expenses which the Surety may sustain or incur by reason of, or in consequence of the execution of such bonds and any renewal, continuation or successor thereof, including but not limited to, sums paid or liabilities incurred in settlement of, and expenses paid or incurred in connection with claims, suits or judgments under such bonds, expenses paid in enforcing the terms hereof, in procuring or attempting to procure the release from liability, or in recovering or attempting to recover losses or expenses paid or incurred, as aforesaid.

(General Indemnity Agreement, ¶ 2, attached as Exhibit A to Complaint). The Surety has already incurred at least $166,418.09 (excluding interest) in losses as a result of having issued the bonds. (Carpenter Aff. ¶ 15). The Defendants' refusal to indemnify Washington International for this amount constitutes a breach of the General Indemnity Agreement. See generally Fireman's Ins. Co. of Newark, New Jersey v. Todesca Equip. Co., et. al., 310 F3d 32 (1st Cir. 2002); Massachusetts Bonding & Ins. Co. v. John Gautieri, 69 R.I. 70 (1943).

The Complaint seeks, among other things, reimbursement of the Surety's costs and expenses associated with the investigation, processing and defense of claims submitted against the bonds, pursuant to the indemnity provision of the General Indemnity Agreement. Nonpayment under the terms of an agreement is a breach that goes to the essence of the contract and that entitles the injured party to bring an action on the contract for damages for its breach. Aiello Constr., Inc. v. Nationwide Tractor Trailer Training & Placement Corp., 122 R.I. 861, 865 (1980).

In the present case, Washington International has demonstrated the existence of a valid contract, the terms of which are clear and unambiguous. Pursuant to the General Indemnity Agreement, the Indemnitors were required to indemnify the Surety from claims, liabilities, etc. arising out of the bonds and the agreement itself. It is undeniable that the Indemnitors have breached their obligation to the Surety by failing to indemnify the Surety for losses incurred in connection with the investigation, processing and defense of claims submitted against the Bonds. As a result of the Indemnitors' breach, the Surety has incurred losses of at least $166,418.09.

In addition, the Surety has a need for security because Dicon appears to be unable to pay its subcontractors and vendors as their bills come due. This raises substantial doubt as to whether Dicon will continue as a viable business, and whether the assets of the Indemnitors will continue to be available to satisfy a judgment for the Surety in this matter. Accordingly, Washington International has demonstrated its entitlement to a prejudgment remedy in the amount of $166,418.09, for reimbursable costs and losses incurred.

## IV. CONCLUSION

Pursuant to R.I. Gen. Laws § 10-5-2 et. seq., Rule 64 of the Federal Rules of Civil Procedure, Washington International moves this Court to order a prejudgment remedy of attachment of sufficient property, both real and personal, of the Defendants to secure the sum of $166,418.09.

Respectfully submitted,
WASHINGTON INTERNATIONAL
INSURANCE COMPANY
By Its Attorney

BY:______________________________

James A. Bigos, Esq. #2958
Bigos & Partington
1725 Mendon Road, Suite 209
Cumberland, RI 02864
Tel (401) 334-4354

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| WASHINGTON INTERNATIONAL INSURANCE COMPANY<br>Plaintiff, | : | CIVIL DOCKET NO. |
| VS. | : | |
| DICON CORPORATION, INC., DAVID IASCONE and CINDY IASCONE<br>Defendants. | : | [redacted] 05 088 T<br><br>FEBRUARY 14, 2005 |

## AFFIDAVIT

STATE OF ILLINOIS )

COUNTY OF Cook )

I, James A. Carpenter, being duly sworn, hereby depose and say:

1. I am over 18 years of age and believe in the obligations of an oath.

2. I am the Vice President of Claims for the Plaintiff, Washington International Insurance Company ("Washington International" or the "Surety"). In that capacity, I am responsible for processing, investigating and administering claims filed against performance and payment bonds issued by the Surety. Because of such responsibilities, I have personal knowledge of the facts set forth herein.

3. Plaintiff, Washington International, is a corporation engaged in doing business as an underwriter of contract surety bonds. The Surety maintains a principal place of business in the State of Illinois.

4. On or about August 2002, non-party, Seekonk Water District, as Owner, entered into a contract (the "Seekonk Contract") with Dicon, as Contractor, for the

construction of a project known as Water Transmission Main and Appurtenant Work, Contract 2002-W1 (the "Seekonk Project").

5. Pursuant to the Seekonk Contract, Dicon was required to post a performance bond guaranteeing the performance of the Seekonk Contract and a payment bond for the benefit of Dicon's subcontractors and suppliers on the Seekonk Project. Dicon requested, and the Surety issued, Performance and Payment Bonds numbered S-9010244. A true and accurate copy of each bond is attached hereto as **Exhibit A**.

6. On or about June 1, 2002, non-party, the Town of Acushnet, as Owner, entered into a contract (the "Acushnet Contract") with Dicon, as Contractor, to furnish certain labor, materials and equipment to the project known as Sewer Force Main Project, Peckham Road, Bow Drive and Middle Road (the "Acushnet Project").

7. Pursuant to the Acushnet Contract, Dicon was required to post a performance bond guaranteeing the performance of the Acushnet Contract and a payment bond for the benefit of Dicon's subcontractors and suppliers on the Acushnet Project. Dicon requested, and the Surety issued, Performance and Payment Bonds numbered S-9010221. A true and accurate copy of each bond is attached hereto as **Exhibit B**.

8. On or about September 12, 2002, non-party, Town of Middletown, as Owner, entered into a contract (the "Middletown Contract") with Dicon, as Contractor, for construction of a project known as the Turner Road Project (the "Middletown Project").

9. Pursuant to the Middletown Contract, Dicon was required to post a performance bond guaranteeing the performance of the Middletown Contract and a payment bond for the benefit of Dicon's subcontractors and suppliers on the Middletown Project. Dicon requested, and the Surety issued, Performance and Payment Bonds numbered S 9012148. A true and accurate copy of each bond is attached hereto as **Exhibit C**.

10. The Seekonk Contract, Acushnet Contract and Middletown Contract are hereinafter collectively referred to as the "Dicon Construction Contracts."

11. The Seekonk Project, Acushnet Project and Middletown Project are hereinafter collectively referred to as the "Dicon Construction Projects."

12. Subsequent to Dicon's commencement of work on the Dicon Construction Projects, certain of Dicon's subcontractors on the Acushnet Project made demand upon the Surety under its Payment Bond claiming that Dicon failed and/or refused to pay for labor, materials and/or equipment furnished to the Acushnet Project. Specifically, Riley Paving made a demand upon the Surety's Payment Bond, which resulted in the Surety having to satisfy its claim thus incurring a loss of $100,000.00. Dicon breached its duties and obligations under the Payment Bond by failing and/or refusing to pay Riley Paving for the labor, materials and equipment it furnished to the Acushnet Project.

13. In addition, and subsequent to Dicon's commencement of work on the Dicon Construction Projects, claims were presented against two of the performance bonds issued by the Surety requiring Washington International to perform its duties and obligations under said bonds and incur substantial losses. The Surety incurred losses under the Performance Bond issued for the Acushnet Project in the amount of at least

$56,300.00 in completing Dicon's scope of work for that Project. The Surety also incurred expenses in investigating, processing and defending claims against the Performance Bonds issued for the Acushnet Project and the Middletown Project in the amount of at least $10,118.90. Dicon breached its duties and obligations under these bonds by failing and/or refusing to fulfill its contractual duties and obligations under the Acushnet and Middletown Contracts.

14. Washington International has notified the Indemnitors of the claims made against the Payment and Performance Bonds and their duties and obligations under the General Indemnity Agreement, including their responsibility to collateralize, exonerate and pay the Surety's attorneys' fees, costs and expenses. However, despite demand, the Indemnitors have failed to indemnify and hold the Surety harmless from all losses as a result of Dicon's failure to satisfy its duties and obligations under the Payment and Performance Bonds.

15. As of the date of this Affidavit, Defendants' total liability to the Plaintiff under the General Indemnity Agreement is at least **$166,418.09**, excluding interest.

16. As a condition of, and in consideration for, the issuance of the Performance Bonds and Payment Bonds on the foregoing projects, Washington International, on April 17, 2000, required the Defendants, Dicon, David Iascone and Cindy Iascone (collectively hereinafter referred to as the "Indemnitors"), to enter into a General Indemnity Agreement. A true and accurate copy of the General Indemnity Agreement is attached hereto as **Exhibit D**. Pursuant to the General Indemnity Agreement, the Indemnitors agreed to exonerate and indemnify Washington International in the event of the failure of Dicon to perform any of its bonded obligations.

17. The relevant portions of the General Indemnity Agreement are set forth as follows:

> 2. The Indemnitors will indemnify the Surety against any and all liability, loss, costs, damages, fees of attorneys and other expenses which the Surety may sustain or incur by reason of, or in consequence of the execution of such bonds and any renewal, continuation or successor thereof, including but not limited to, sums paid or liabilities incurred in settlement of, and expenses paid or incurred in connection with claims, suits, or judgments under such bonds, expenses paid or incurred in enforcing the terms hereof, in procuring or attempting to procure the release from liability, or in recovering or attempting to recover losses or expenses paid or incurred, as aforesaid.
>
> 3. If the Surety shall set up a reserve to cover any liability, claim asserted, suit or judgment under any such bond, the Indemnitors will, immediately upon demand and whether or not the Surety shall have made any payment therefore, deposit with the Surety a sum of money equal to such reserve and any increase thereof as collateral security on such bond, and such sum any other money or property which shall have been or shall hereafter be pledged as collateral security on any such bond shall be available, in the discretion of the Surety, as collateral security on all bonds coming within the scope of this instrument or for any other indebtedness of the Indemnitors to the Surety; and any such collateral security shall be held subject to the terms of the Surety's regular form of receipt for collateral, which is by reference made a part hereof.
>
> 4. If any such bond be given in connection with a contract, the Surety in its sole discretion is hereby authorized, but not required, . . . (c) in the event of any default in the performance of the contract, or the breach of this agreement or of any bond connected therewith, or the failure to diligently prosecute the work under any contract, or to pay for labor and materials used in the prosecution of the contract, or in the event work has ceased or been suspended on any contract or contracts covered by any said bonds, to take possession of the work under the contract, and, at the expense of the Indemnitors, to complete the contract or cause the same to be completed or to consent to the completion thereof, and to take any other action which the Surety may deem appropriate. In the event that the Surety takes possession of the work as above provided, the Indemnitors hereby release and discharge the Surety, in this connection, from al liability for all its actions and omissions except for deliberate misfeasance.
>
> 5. The Indemnitors hereby assign, transfer, pledge and convey to the Surety (effective as of the date of each such bond, but only in the event of default, breach or failure as referred to in proceeding Section 4), as

collateral security, to secure the obligations hereunder and any other indebtedness and liabilities of the Indemnitors to the Surety, all of their rights under the contracts, referred to in such bonds, including their right, title and interest in and to (1) all subcontracts let in connection therewith and such subcontractors' surety bonds, (2) all machinery, plant, equipment, tools and materials which shall be upon the site or sites of the work or elsewhere for the purpose of the contracts, including all materials ordered for the contracts, and (3) any and all sums due or which may thereafter become due under such contracts and all sums due or to become due on all other contracts, bonded or unbonded, in which any or all of the Indemnitors have an interest.

8. The Surety shall have the exclusive right to decide and determine whether any claim, liability, suit or judgment made or brought against the Surety or the Indemnitors or any one of them on any such bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and the Surety's decision thereon, if made in good faith shall be final and binding upon the Indemnitors, unless the Indemnitors shall request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys fees, including those of the Surety. An itemized statement of payments made by the Surety for any of the purposes specified herein, sworn to by an officer of the Surety, or the voucher or vouchers for such payments, shall be prima facie evidence of the liability of the Indemnitors to reimburse the Surety for such payments, with interest.

18. The Defendants were notified by the Surety of the losses incurred on the various Dicon Construction Projects as a result of Dicon's failure to satisfy its duties and obligations under various payment and performance bonds.

19. The Surety expects that the Defendants may attempt to encumber and/or transfer title of certain real or personal property in order to avoid, hinder and delay their duties and obligations to the Surety.

20. I am unaware of any viable set-offs, counterclaims, or defenses available to the Defendants with respect to this action.

James A. Carpenter

On this 14th day of February, 2005, the individual known to me, or sufficiently proven to be, James A. Carpenter, attested to the truth of the above statements to the best of his knowledge and signed the foregoing instrument.

"OFFICIAL SEAL"
SUSAN ANSEL
Notary Public, State of Illinois
My Commission Expires 7/6/2008

Notary Public
My Commission Expires: 7-6-2008



HARTFORD 109854v1

# LABOR & MATERIAL PAYMENT BOND

THIS BOND IS ISSUED SIMUTANEOUSLY WITH PERFORMANCE BOND IN FAVOR OF THE OWNER CONDITIONED ON THE FULL AND FAITHFUL PERFORMANCE OF THE CONTRACT

**BOND NO. S-9010244**

KNOT ALL MEN BY THESE PRESENTS:

That Dicon Corporation, Inc., 292 Scituate Avenue, Johnston, RI 02919, as Principal, hereinafter called Principal, and **WASHINGTON INTERNATIONAL INSURANCE COMPANY**, 300 Park Boulevard, Ste. 500, Itasca, IL 60143, as Surety, hereinafter called Surety, are held and firmly bound unto Seekonk Water District, PO Box 98, Water Lane, Seekonk, MA 02771 as Obligee, hereinafter called Owner, for the use and benefit of claimants hereinbelow defined, in the amount of Three Hundred Forty Three Thousand, Four Hundred Eighty Seven 78/100 Dollars ($343,487.78), for the payment whereof Principal and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly be these presents.

WHEREAS, Principal has by written agreement dated ______________ entered into a contract with Owner for Water Transmission Mains in accordance with drawings and specifications prepared by __________, which contract is by reference made a part hereof and is hereinafter referred to as the Contract.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Principal shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the Contract, then this obligation shall be void; otherwise is shall remain in full force and effect, subject, however, to the following conditions:

1) A claimant is defined as one having a direct contract with the Principal or with a Subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the Contract, labor and material being construed to include that part of water, gas, power, light, heat, oil gasoline, telephone service or rental of equipment directly applicable to the Contract.

2) The above named Principal and Surety hereby jointly and severally agree with the Owner that every claimant as herein defined, who has not been paid in full before the full expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant and have execution thereon. The Owner shall not be liable for the payment of any costs or expenses of any such suit.

3) No suit of action shall be commenced hereunder by any claimant:

a.) Unless claimant, other than one having a direct contract with the Principal, shall have given written notice to any tow of the following: The Principal, the Owner, or the Surety above named, within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is being made, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were furnished, or for whom the work or labor was done or performed. Such notice shall be serviced by mailing the same by registered mail or certified mail, postage prepaid, in an envelope addressed the Principal, Owner or Surety, at any place where an office is regularly maintained for the transaction of business, or serviced in any manner in which legal process may be serviced in the state in which the aforesaid project is located, save that such service need not be made by a public officer.

b.) After the expiration of one (1) year following the date on which Principal ceased Work on said Contract, it being understood, however, that if any limitation embodied in this bond is prohibited by any law controlling the construction hereof such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

c.) Other than in a state court of competent jurisdiction in and for the county or other political subdivision of the state in which the Project, or any part thereof, is situated, or in the United States District Court for the district in which the Project, or any part thereof, is situated, and not elsewhere.

4) The amount of this bond shall be reduced by and to the extent of any payment or payments made in good faith hereunder, inclusive of the payment by Surety of mechanics' liens which may be filed of record against said improvement, whether or not claim for the amount off such lien be presented under and against this bond.

# LABOR & MATERIAL PAYMENT BOND

THIS BOND IS ISSUED SIMUTANEOUSLY WITH PERFORMANCE BOND IN FAVOR OF THE OWNER CONDITIONED ON THE FULL AND FAITHFUL PERFORMANCE OF THE CONTRACT

**BOND NO. S-9010221**

KNOT ALL MEN BY THESE PRESENTS:

That Dicon Corporation, Inc., 292 Scituate Avenue, Johnston, RI 02919, as Principal, hereinafter called Principal, and **WASHINGTON INTERNATIONAL INSURANCE COMPANY**, 300 Park Boulevard, Ste. 500, Itasca, IL 60143, as Surety, hereinafter called Surety, are held and firmly bound unto Town of Acushnet, Board of Selectmen, 122 Main Street, Acushnet, MA 02743 as Obligee, hereinafter called Owner, for the use and benefit of claimants hereinbelow defined, in the amount of Four Hundred Forty Thousand, One Hundred Twenty Two 93/100 Dollars ($440,122.93), for the payment whereof Principal and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly be these presents.

WHEREAS, Principal has by written agreement dated June 01, 2002 entered into a contract with Owner for Force Main in accordance with drawings and specifications prepared by __________, which contract is by reference made a part hereof and is hereinafter referred to as the Contract.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Principal shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the Contract, then this obligation shall be void; otherwise is shall remain in full force and effect, subject, however, to the following conditions:

1) A claimant is defined as one having a direct contract with the Principal or with a Subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the Contract, labor and material being construed to include that part of water, gas, power, light, heat, oil gasoline, telephone service or rental of equipment directly applicable to the Contract.

2) The above named Principal and Surety hereby jointly and severally agree with the Owner that every claimant as herein defined, who has not been paid in full before the full expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant and have execution thereon. The Owner shall not be liable for the payment of any costs or expenses of any such suit.

3) No suit of action shall be commenced hereunder by any claimant:

a.) Unless claimant, other than one having a direct contract with the Principal, shall have given written notice to any tow of the following: The Principal, the Owner, or the Surety above named, within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is being made, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were furnished, or for whom the work or labor was done or performed. Such notice shall be serviced by mailing the same by registered mail or certified mail, postage prepaid, in an envelope addressed the Principal, Owner or Surety, at any place where an office is regularly maintained for the transaction of business, or serviced in any manner in which legal process may be serviced in the state in which the aforesaid project is located, save that such service need not be made by a public officer.

b.) After the expiration of one (1) year following the date on which Principal ceased Work on said Contract, it being understood, however, that if any limitation embodied in this bond is prohibited by any law controlling the construction hereof such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

c.) Other than in a state court of competent jurisdiction in and for the county or other political subdivision of the state in which the Project, or any part thereof, is situated, or in the United States District Court for the district in which the Project, or any part thereof, is situated, and not elsewhere.

4) The amount of this bond shall be reduced by and to the extent of any payment or payments made in good faith hereunder, inclusive of the payment by Surety of mechanics' liens which may be filed of record against said improvement, whether or not claim for the amount off such lien be presented under and against this bond.

6

# PERFORMANCE BOND

## BOND NO. S-9010221

KNOW ALL MEN BY THESE PRESENTS:

That Dicon Corporation, Inc., 292 Scituate Avenue, Johnston, RI 02919, as Principal, hereinafter called the Contractor, and **WASHINGTON INTERNATIONAL INSURANCE COMPANY**, 300 Park Boulevard, Ste. 500, Itasca, IL 60143, as Surety, hereinafter called Surety, are held and firmly bound unto Town of Acushnet, Board of Selectmen, 122 Main Street, Acushnet, MA 02743, as Obligee, hereinafter called Owner in the amount of Four Hundred Forty Thousand, One Hundred Twenty Two 93/100 dollars ($440,122.93), for the payment where of Contractor and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly be these presents.

WHEREAS, Contractor has by written agreement dated June 01, 2002 entered into a contract with Owner for Force Main, in accordance with drawings and specifications prepared by ________, which contract is by reference made a part hereof, and is hereinafter referred to as the Contract.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Contractor shall promptly and faithfully perform said Contract, then this obligation shall be null and void; otherwise it shall remain in full force and effect. The Surety hereby waives notice of any alteration or extension of time made by the Owner. Whenever Contractor shall be, and declared by Owner to be in default under the Contract, the Owner having performed Owner's Obligations thereunder, the Surety may promptly remedy the default, or shall promptly:

1) Complete the Contract in accordance with its terms and conditions, or
2) Obtain a bid or bids for completing the contract in accordance with its terms and conditions and upon determination by Surety of the lowest responsible bidder, or, if the Owner elects, upon determination by the Owner and the Surety jointly of the lowest responsible bidder, arrange for a contract between such bidder and owner, and make available as work progresses (even though there should be a default of a succession of defaults under the contract or contracts of completion arranged under this paragraph) sufficient funds to pay the cost of completion less the balance of the contract price; but not exceeding, including the other costs and damages for which the Surety may be liable hereunder, the amount set forth in the first paragraph hereof. The term "balance of the contract" shall mean the total amount payable by Owner to Contractor under the Contract and any amendments thereto, less the amount properly paid by Owner to Contractor.

Any suit under this bond must be instituted before the expiration date of two (2) years from the date on which final payment under the Contract falls due.

No right of action shall accrue on this bond to or for the use of any person or corporation other than the Owner named herein or the heirs, executors, administrators or successors of Owner.

Signed and Sealed this 1st day of June A.D., 2002 .

**Dicon Corporation, Inc.**
(Principal)

BY:______________________________ (SEAL)

______________________________
(Witness)

TITLE:______________________________

**WASHINGTON INTERNATIONAL INSURANCE COMPANY**
(Surety)

BY:______________________________
William L. Labbe, Attorney-in-Fact (SEAL)

______________________________
(Witness)

Jun 10 03 10:51a p.2

# PERFORMANCE BOND

**BOND NO. S-9012148**

KNOW ALL MEN BY THESE PRESENTS:

That Dicon Corporation, Inc., 292 Scituate Ave., Johnston, RI 02919, as Principal, hereinafter called the Contractor, and **WASHINGTON INTERNATIONAL INSURANCE COMPANY**, 300 Park Boulevard, Ste. 500, Itasca, IL 60143, as Surety, hereinafter called Surety, are held and firmly bound unto Town of Middletown, Finance Director's Office, 350 E. Main Road, Middletown, RI 02840, as Obligee, hereinafter called Owner in the amount of Eight Hundred Ninety Eight Thousand, Nine Hundred Seventy Eight 21/100 dollars ($898,978.21), for the payment where of Contractor and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly be these presents.

WHEREAS, Contractor has by written agreement dated September 13, 2002 entered into a contract with Owner for Drainage Improvements & Road Work, in accordance with drawings and specifications prepared by ________, which contract is by reference made a part hereof, and is hereinafter referred to as the Contract.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Contractor shall promptly and faithfully perform said Contract, then this obligation shall be null and void; otherwise it shall remain in full force and effect. The Surety hereby waives notice of any alteration or extension of time made by the Owner. Whenever Contractor shall be, and declared by Owner to be in default under the Contract, the Owner having performed Owner's Obligations thereunder, the Surety may promptly remedy the default, or shall promptly:

1) Complete the Contract in accordance with its terms and conditions, or
2) Obtain a bid or bids for completing the contract in accordance with its terms and conditions and upon determination by Surety of the lowest responsible bidder, or, if the Owner elects, upon determination by the Owner and the Surety jointly of the lowest responsible bidder, arrange for a contract between such bidder and owner, and make available as work progresses (even though there should be a default of a succession of defaults under the contract or contracts of completion arranged under this paragraph) sufficient funds to pay the cost of completion less the balance of the contract price; but not exceeding, including the other costs and damages for which the Surety may be liable hereunder, the amount set forth in the first paragraph hereof. The term "balance of the contract" shall mean the total amount payable by Owner to Contractor under the Contract and any amendments thereto, less the amount properly paid by Owner to Contractor.

Any suit under this bond must be instituted before the expiration date of two (2) years from the date on which final payment under the Contract falls due.

No right of action shall accrue on this bond to or for the use of any person or corporation other than the Owner named herein or the heirs, executors, administrators or successors of Owner.

Signed and Sealed this 13th day of September A.D., 2002.

| | |
|---|---|
| [signature] (Witness) | Dicon Corporation, Inc. (Principal) BY: [signature] (SEAL) TITLE: President |
| [signature] (Witness) | WASHINGTON INTERNATIONAL INSURANCE COMPANY (Surety) BY: [signature] William F. Labbe, Attorney-in-Fact (SEAL) |

Jun 10 03 10:53a p.1

Signed and Sealed this 13th. day of September A.D., 2002

Dicon Corporation, Inc.
(Principal)

BY: _________________________ (SEAL)

TITLE: President

_________________________
(Witness)

WASHINGTON INTERNATIONAL INSURANCE COMPANY
(Surety)

BY: _________________________
William L. Labbe, Attorney-in-Fact (SEAL)

_________________________
(Witness)

Jun 10 03 10:51a p.3

# LABOR & MATERIAL PAYMENT BOND

THIS BOND IS ISSUED SIMUTANEOUSLY WITH PERFORMANCE BOND IN FAVOR OF THE OWNER CONDITIONED ON THE FULL AND FAITHFUL PERFORMANCE OF THE CONTRACT

BOND NO. S-9012148

KNOT ALL MEN BY THESE PRESENTS:

That Dicon Corporation, Inc., 292 Scituate Ave., Johnston, RI 02919, as Principal, hereinafter called Principal, and WASHINGTON INTERNATIONAL INSURANCE COMPANY, 300 Park Boulevard, Ste. 500, Itasca, IL 60143, as Surety, hereinafter called Surety, are held and firmly bound unto Town of Middletown, Finance Director's Office, 350 E. Main Road, Middletown, RI 02840 as Obligee, hereinafter called Owner, for the use and benefit of claimants hereinbelow defined, in the amount of Eight Hundred Ninety Eight Thousand, Nine Hundred Seventy Eight 21/100 Dollars ($898,978.21), for the payment whereof Principal and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly be these presents.

WHEREAS, Principal has by written agreement dated September 13, 2002 entered into a contract with Owner for Drainage Improvements & Road Work in accordance with drawings and specifications prepared by __________, which contract is by reference made a part hereof and is hereinafter referred to as the Contract.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Principal shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the Contract, then this obligation shall be void; otherwise is shall remain in full force and effect, subject, however, to the following conditions:

1) A claimant is defined as one having a direct contract with the Principal or with a Subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the Contract, labor and material being construed to include that part of water, gas, power, light, heat, oil gasoline, telephone service or rental of equipment directly applicable to the Contract.

2) The above named Principal and Surety hereby jointly and severally agree with the Owner that every claimant as herein defined, who has not been paid in full before the full expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant and have execution thereon. The Owner shall not be liable for the payment of any costs or expenses of any such suit.

3) No suit of action shall be commenced hereunder by any claimant:

a.) Unless claimant, other than one having a direct contract with the Principal, shall have given written notice to any tow of the following: The Principal, the Owner, or the Surety above named, within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is being made, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were furnished, or for whom the work or labor was done or performed. Such notice shall be serviced by mailing the same by registered mail or certified mail, postage prepaid, in an envelope addressed the Principal, Owner or Surety, at any place where an office is regularly maintained for the transaction of business, or serviced in any manner in which legal process may be serviced in the state in which the aforesaid project is located, save that such service need not be made by a public officer.

b.) After the expiration of one (1) year following the date on which Principal ceased Work on said Contract, it being understood, however, that if any limitation embodied in this bond is prohibited by any law controlling the construction hereof such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

c.) Other than in a state court of competent jurisdiction in and for the county or other political subdivision of the state in which the Project, or any part thereof, is situated, or in the United States District Court for the district in which the Project, or any part thereof, is situated, and not elsewhere.

4) The amount of this bond shall be reduced by and to the extent of any payment or payments made in good faith hereunder, inclusive of the payment by Surety of mechanics' liens which may be filed of record against said improvement, whether or not claim for the amount off such lien be presented under and against this bond.

[redacted]

NAS SURETY GROUP

NORTH AMERICAN SPECIALTY INSURANCE COMPANY
WASHINGTON INTERNATIONAL INSURANCE COMPANY

## GENERAL POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, THAT North American Specialty Insurance Company, a corporation duly organized and existing under laws of the State of New Hampshire, and having its principal office in the City of Manchester, New Hampshire, and Washington International Insurance Company, a corporation organized and existing under the laws of the State of Arizona and having its principal office in the city of Itasca, Illinois, each does hereby make, constitute and appoint:

WILLIAM L. LABBE, REGINA M. MATHIEU, JOSEPH H. FEITELBERG
BRIAN E. MURPHY AND ANTHONY J. ABRAHAM
JOINTLY OR SEVERALLY

Its true and lawful Attorney(s)-in-Fact, to make, execute, seal and deliver, for and on its behalf and as its act and deed, bonds or other writings obligatory in the nature of a bond on behalf of each of said Companies, as surety, on contracts of suretyship as are or may be required or permitted by law, regulation, contract or otherwise, provided that no bond or undertaking or contract or suretyship executed under this authority shall exceed the amount of: TEN MILLION (10,000,000.00) DOLLARS

This Power of Attorney is granted and is signed by facsimile under and by the authority of the following Resolutions adopted by the Boards of Directors of both North American Specialty Insurance Company and Washington International Insurance Company at meetings duly called and held on the 24th of March, 2000:

"RESOLVED, that any two of the President, any Senior Vice President, any Vice President, any Assistant Vice President, the Secretary or any Assistant Secretary be, and each or any of them hereby is authorized to execute a Power of Attorney qualifying the attorney named in the given Power of Attorney to execute on behalf of the Company bonds, undertakings and all contracts of surety, and that each or any of them hereby is authorized to attest to the execution of any such Power of Attorney and to attach therein the seal of the Company; and it is

FURTHER RESOLVED, that the signature of such officers and the seal of the Company may be affixed to any such Power of Attorney or to any certificate relating thereto by facsimile, and any such Power of Attorney or certificate bearing such facsimile signatures or facsimile seal shall be binding upon the Company when so affixed and in the future with regard to any bond, undertaking or contract of surety to which it is attached."

By [signature]
Daniel G. Gibson, VP, CFO & Treasurer of North American Specialty Insurance Company & Washington International Insurance Company

By [signature]
Steven P. Anderson, Sr. Vice President of Washington International Insurance Company & Vice President of North American Specialty Insurance Company

IN WITNESS WHEREOF, North American Specialty Insurance Company and Washington International Insurance Company have caused their official seals to be hereunto affixed, and these presents to be signed by their authorized officers this 12 day of June, 20 01.

North American Specialty Insurance Company
Washington International Insurance Company

State of Illinois
County of DuPage ss:

12 day of June, 20 01, before me, a Notary Public personally appeared and Daniel G. Gibson, VP, CFO and Treasurer of both aforementioned companies and Steven P. Anderson, Sr. Vice President of Washington International Insurance Company and Vice President of North American Specialty Insurance Company personally known to me, who being by me duly sworn, acknowledged that they signed the above Power of Attorney as officers of and acknowledged said instrument to be the voluntary act and deed of their respective companies.

OFFICIAL SEAL
YASMIN A PATEL

[signature]
Yasmin A. Patel, Notary Public

I, Robert J. Cate, the duly elected VP & Assistant Secretary of North American Specialty Insurance Company and Washington International Insurance Company, do hereby certify that the above and foregoing is a true and correct copy of a Power of Attorney given by said North American Specialty Insurance Company and Washington International Insurance Company, which is still in full force and effect.

IN WITNESS WHEREOF, I have set my hand and affixed the seals of the Companies this 13th day of September, 2002.

[signature]

NAS SURETY GROUP

NORTH AMERICAN SPECIALTY INSURANCE COMPANY
WASHINGTON INTERNATIONAL INSURANCE COMPANY

## GENERAL POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, THAT North American Specialty Insurance Company, a corporation duly organized and existing under laws of the State of New Hampshire, and having its principal office in the City of Manchester, New Hampshire, and Washington International Insurance Company, a corporation organized and existing under the laws of the State of Arizona and having its principal office in the city of Itasca, Illinois, each does hereby make, constitute and appoint:

WILLIAM L. LABBE, REGINA M. MATHIEU, JOSEPH H. FEITELBERG
BRIAN E. MURPHY AND ANTHONY J. ABRAHAM
JOINTLY OR SEVERALLY

Its true and lawful Attorney(s)-in-Fact, to make, execute, seal and deliver, for and on its behalf and as its act and deed, bonds or other writings obligatory in the nature of a bond on behalf of each of said Companies, as surety, on contracts of suretyship as are or may be required or permitted by law, regulation, contract or otherwise, provided that no bond or undertaking or contract or suretyship executed under this authority shall exceed the amount of: TEN MILLION (10,000,000.00) DOLLARS

Signed and Sealed this 13th. day of September A.D., 2002

(Witness)

Dicon Corporation, Inc.
(Principal)

BY: ______________________ (SEAL)

TITLE: President

(Witness)

WASHINGTON INTERNATIONAL INSURANCE COMPANY
(Surety)

BY: ______________________
William L. Labbe, Attorney-in-Fact (SEAL)

Tecon Corporation, Inc.
92 Scituate Avenue
Johnston, RI 02919

# WASHINGTON
INTERNATIONAL INSURANCE COMPANY

1930 THOREAU DRIVE, SUITE 101,
SCHAUMBURG, ILLINOIS 60173

## GENERAL INDEMNITY AGREEMENT

KNOW ALL MEN BY THESE PRESENTS, that whereas the undersigned, hereinafter called Indemnitors, have requested and do hereby request

*WASHINGTON INTERNATIONAL INSURANCE COMPANY*

hereinafter referred to as Surety, to execute or procure the execution of such bonds, undertakings or recognizances (all of which are hereinafter included within the term "bond or bonds") as have been and such as may hereafter be applied for directly or through an agent, attorney or other representative or required; solely or as co-adventurer with others, by any of the Indemnitors or by any person, firm, corporation or association whose name shall, for that purpose, have been furnished to the Surety by any of the Indemnitors, it being understood and agreed that this instrument shall cover all bonds so applied for and executed, whether or not this instrument is referred to or mentioned in connection therewith;

NOW, THEREFORE, in consideration of the premises and of the execution or continuance of such bonds, the Indemnitors for themselves, their heirs, executors, administrators, successors and assigns, do hereby jointly and severally, covenant and agree with the Surety, its successors and assigns, as follows:

1. The Indemnitors will pay, when due, all premiums for each of such bonds in accordance with the Surety's regular manual rates in effect on the date such bond becomes effective, as long as liability thereunder shall continue, and until the Surety is furnished with evidence satisfactory to the Surety of its discharge or release from the bonds, or of all liability by reason thereof.

2. The Indemnitors will indemnify the Surety against any and all liability, loss, costs, damages, fees of attorneys and other expenses which the Surety may sustain or incur by reason of, or in consequence of the execution of such bonds and any renewal, continuation or successor thereof, including but not limited to, sums paid or liabilities incurred in settlement of, and expenses paid or incurred in connection with claims, suits, or judgments under such bonds, expenses paid or incurred in enforcing the terms hereof, in procuring or attempting to procure release from liability, or in recovering or attempting to recover losses or expenses paid or incurred, as aforesaid.

3. If the Surety shall set up a reserve to cover any liability, claim asserted, suit or judgment under any such bond, the Indemnitors will, immediately upon demand and whether or not the Surety shall have made any payment therefor, deposit with the Surety a sum of money equal to such reserve and any increase thereof as collateral security on such bond, and such sum and any other money or property which shall have been or shall hereafter be pledged as collateral security on any such bond shall be available, in the discretion of the Surety, as collateral security on all bonds coming within the scope of this instrument or for any other indebtedness of the Indemnitors to the Surety; and any such collateral security shall be held subject to the terms of the Surety's regular form of receipt for collateral, which is by reference made a part hereof.

4. If any such bond be given in connection with a contract, the Surety in its sole discretion is hereby authorized, but not required, (a) to consent to any change in the contract or in the plans and specifications relating thereto; (b) to make or guarantee advances or loans for the purposes of the contract without any obligation to see to the application thereof, it being understood that the amount of all such advances or loans shall be conclusively presumed to be a loss hereunder for which the Indemnitors are liable; (c) in the event of any default in the performance of the contract, or the breach of this agreement or of any bond connected therewith, or the failure to diligently prosecute the work under any contract, or to pay for labor and materials used in the prosecution of the contract, or in the event work has ceased or been suspended on any contract or contracts covered by any said bonds, to take possession of the work under the contract, and, at the expense of the Indemnitors, to complete the contract or cause the same to be completed or to consent to the completion thereof, and to take any other action which the Surety may deem appropriate. In the event that the Surety takes possession of the work as above provided, the Indemnitors hereby release and discharge the Surety, in this connection, from all liability for all its actions and omissions except for deliberate malfeasance.

5. The Indemnitors hereby assign, transfer, pledge and convey to the Surety (effective as of the date of each such bond, but only in the event of default, breach or failure as referred to in preceding Section 4.), as collateral security, to secure the obligations hereunder and any other indebtedness and liabilities of the Indemnitors to the Surety, all of their rights under the contracts, referred to in such bonds, including their right, title and interest in and to (1) all subcontracts let in connection therewith and such subcontractors' surety bonds, (2) all machinery, plant, equipment, tools and materials which shall be upon the site or sites of the work or elsewhere for the purposes of the contracts, including all materials ordered for the contracts, and (3) any and all sums due or which may thereafter become due under such contracts and all sums due or to become due on all other contracts, bonded or unbonded, in which any or all of the Indemnitors have an interest.

6. The Surety may at its option, file or record this agreement or any other document executed by any or all of the Indemnitors, individually or jointly, in connection with application, issuance or execution of any bond or bonds, as a security agreement or as part of a financing statement or as notice of its prior interest and assignment under the provisions of the Uniform

Commercial Code or any other statute or regulation of any jurisdiction or agency, but that the filing or recording of such document shall be solely at the option of the Surety and that the failure to do so shall not release or impair any of the obligations of the Indemnitors under this agreement.

7. If any of the bonds are executed in connection with a contract which by its terms or by law prohibits assignment of contract proceeds, or any part thereof, the Indemnitors covenant and agree to hold all money or other proceeds of the contract, whether received as payment or loan, as a trust for the benefit of the Surety and to use such money or other proceeds for the purpose of performing the contract and discharging the obligation of the bond, and for no other purpose, until the bond is completely exonerated.

8. The Surety shall have the exclusive right to decide and determine whether any claim, liability, suit or judgment made or brought against the Surety or the Indemnitors or any one of them on any such bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and the Surety's decision thereon, if made in good faith shall be final and binding upon the Indemnitors, unless the Indemnitors shall request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys fees, including those of the Surety. An itemized statement of payments made by the Surety for any of the purposes specified herein, sworn to by an officer of the Surety, or the voucher or vouchers for such payments, shall be prima facie evidence of the liability of the Indemnitors to reimburse the Surety for such payments, with interest.

9. The Indemnitors hereby authorize the Surety in its sole discretion to do the following: (a) from time to time to make or consent to any change in, or issue any substitute for or renewal of, any such bond, or in any contract referred to in any such bond, and this instrument shall apply to such substituted or changed bond or renewal; (b) if any such bond be given in an action or proceeding in any court, to recognize any attorney of record in such action or proceeding for any party thereto at the date of the execution of such bond as the authorized representative of such party until the Surety shall have been fully discharged from liability under such bond; (c) to take such steps as the Surety may deem necessary or proper to obtain release from liability from any such bond.

10. The Indemnitors hereby waive notice of the execution of any such bonds or of any act, fact or information coming to the notice or knowledge of the Surety concerning or affecting its rights or liabilities under any such bond or rights or liabilities of the Indemnitors hereunder, notice of all such being hereby expressly waived.

11. If the Surety shall procure any other company or companies to execute or join with it in executing, or to reinsure, any such bonds, this instrument shall inure to the benefit of such other company or companies, its or their successors and assigns, so as to give to it or them a direct right of action against the Indemnitors to enforce this instrument and, in that event, the word "Surety", wherever used herein, shall be deemed to include such company or companies, as their respective interests may appear.

12. The liability of the Indemnitors hereunder shall not be affected by the failure of any party to sign any such bond nor by any claim that other indemnity or security was to have been obtained nor by the release of any indemnity, or Indemnitor, nor the return or exchange of any collateral that may have been obtained; and if any party signing this instrument is not bound for any reason this obligation shall still be binding upon each and every other party.

13. Separate suits may be brought hereunder as causes of action accrue, and suit may be brought against any or all of the Indemnitors; and suit or suits upon one or more causes of action, or against one or more of the Indemnitors, shall not prejudice or bar subsequent suits against any other or all of the Indemnitors on the same or any other cause or causes of action, whether theretofore or thereafter accruing.

14. The Indemnitors waive any defense that this instrument was executed subsequent to the date of any such bond, admitting and covenanting that such bond was executed pursuant to the Indemnitors' request and in reliance on the Indemnitors' promise to execute this instrument. In the event any part of this indemnity agreement shall be void under the law of the place governing the construction hereof, then such part only shall be considered as deleted and the remainder of this agreement shall endure in full force and effect.

15. The Surety, at its option, may decline to execute or participate in or procure the execution of any such bonds.

16. Wherever used in this instrument the plural term shall include the singular and the singular shall include the plural, as the circumstances require.

17. The Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Surety or its designee as their Attorney in Fact with the right, but not the obligation, to exercise all of the rights of Indemnitors assigned, transferred and set over to the Surety in this Agreement, and in the name of the Indemnitors or any of them to make, execute and deliver any and all additional or other assignments, documents or papers, including but not limited to the execution of instruments referred to in Section 5, and the endorsement of checks or other instruments representing payment of contract monies, deemed necessary and proper by the Surety in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Indemnitors hereby ratify and affirm all acts and actions taken and done by the Surety or its designee as such Attorney in Fact.

18. The Indemnitors hereby waive and abandon, so far as their respective obligations under this agreement are concerned, all rights to claim any of the property, including the respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any state, territory, or possession.

19. The obligation of the Indemnitors hereunder shall be continuous; provided, however, that any of the Indemnitors may give the Surety not less than thirty days written notice by registered mail of his desire to terminate this agreement but any such notice of termination shall not operate to modify, bar, discharge, limit, affect or impair his liability hereunder on or by reason of any such bond executed prior to the termination of such thirty days.

20. This agreement may not be changed or modified orally. No change or modification shall be effective unless specifically agreed in writing.

MAY.10'2004 07:11 630 227 4777 Washington Int #5519 P.004/005

affixed their seals this ______

Witness or Attest

Witness ______ Dicon Corporation, Inc.

BY: ______ (Seal)

David F. Iascone, President

P. O. Address 292 Scituate Ave., Johnston, RI

Witness ______ David F. Iascone, Individual

BY: ______ (Seal)

P. O. Address 220 Cherry Hill Rd., Johnston, RI

Witness ______ Cyndy Iascone, Individual

BY: ______ (Seal)

P. O. Address 220 Cherry Hill Rd., Johnston, RI

Witness ______ ______ (Seal)

P. O. Address ______

Witness ______ ______ (Seal)

P. O. Address ______

INDIVIDUAL(S) ACKNOWLEDGMENT

STATE OF Rhode Island } ss:
COUNTY OF Providence }

On this 17th day of April 2000, before me personally came David F. Iascone & Cyndy Iascone to me known and known to me to be the *individual(s)* who executed the foregoing instrument, and acknowledged that they executed same.

______
NOTARY PUBLIC

PARTNER(S) ACKNOWLEDGMENT

STATE OF ______ } ss:
COUNTY OF ______ }

On this ______ day of ______, 19____, before me personally came ______ to me known, and stated that ____he____is (are) *partner(s)* in the firm of ______

and acknowledged that ____he____executed the foregoing instrument as the act of the said firm.

______
NOTARY PUBLIC

(FOR CORPORATE ACKNOWLEDGMENT(S) SEE FOLLOWING PAGE)

**CORPORATE ACKNOWLEDGMENT(S)**

STATE OF Rhode Island } ss:
COUNTY OF Providence

On this 17th day of April, 2000, before me personally came David F. Iacoone, to me known, who, being by me duly sworn, did depose and say that he resides in Johnston, RI, that he is the President of the Dicon Corporation, Inc. the corporation which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation, and that he signed his name to the said instrument by like order.

[signature]
NOTARY PUBLIC

STATE OF ________ } ss:
COUNTY OF ________

On this ________ day of ________, 19____, before me personally came ________, to me known, who, being by me duly sworn, did depose and say that he resides in ________, that he is the ________ of the ________ the corporation which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation, and that he signed his name to the said instrument by like order.

________
NOTARY PUBLIC

STATE OF ________ } ss:
COUNTY OF ________

On this ________ day of ________, 19____, before me personally came ________, to me known, who, being by me duly sworn, did depose and say that he resides in ________, that he is the ________ of the ________ the corporation which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation, and that he signed his name to the said instrument by like order.

________
NOTARY PUBLIC

**Cashin Spinelli & Ferretti, LLC**

***Surety and Engineering Consultants***

Bohemia, New York • Southington, Connecticut • Blue Bell, Pennsylvania • Wichita, Kansas • Lincolnshire, IL • San Juan, PR

# TELEFAX COVER LETTER

Date: 9/8/04

To: Peter Strniste

Company: Halloran & Sage

Telefax Number: 548 0006

From: John McManus, Esq

Project Name: Dicon Corp Inc.

CSF Project No.: 24.402

Number of Pages: 5 plus cover

Message:

General Indemnity Agreement

**IF YOU DO NOT RECEIVE ALL OF THE PAGES SHOWN ABOVE, PLEASE CALL 860-628-5557**

**WARNING: CONFIDENTIALITY NOTICE:**
This transmission is the private confidential property of the sender and is a privileged communication intended solely for the receipt, use, benefit and information of the recipient indicated above. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this transmission is strictly prohibited and may result in legal liability on your part. If you have received this transmission in error, please call the above telephone number to arrange for the return of this transmission.

133 Main Street, Southington, Connecticut 06489 • Tel: 860-628-5557 • Fax: 860-621-2056 • WWW.CSFLLC.COM

NAS

Dicon

**NAS SURETY GROUP**
North American Specialty Insurance Company
Washington International Insurance Company

1200 Arlington Heights Road · Suite 400 · Itasca, IL 60143
Direct Dial: 630-227-4735 · Toll Free: 800-338-0753
Facsimile: 630-227-4777 · E-mail bill_hattings@nassurety.com

## FACSIMILE MESSAGE

| | | | |
|---|---|---|---|
| TO: | John McManus | DATE: | ~~April~~ May 10 2004 |
| COMPANY: | | FROM | Bill Hattings |
| FAX NO.: | | RE: | |

This message contains 1 page(s) including this page. If any part of this message is poorly received or missing, please let us know at (630) 227-4700.

Bill Hattings

**A MEMBER OF THE SWISS RE GROUP**

**CONFIDENTIALITY NOTE:** The information contained in this facsimile message is confidential and intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of the information contained in this facsimile is strictly prohibited. If you have received this facsimile in error, please immediately notify the sender by telephone and return the original to the above indicated address by U.S. Mail. Thank you.